**In the Matter of CSY YACHT CORPORATION, Debtor.**

**Bankruptcy No. 81–1568.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 27, 1984.

See also Bkrtcy., 34 B.R. 215.

Jeffrey Warren, Tampa, Fla., for debtor.

Joseph Castello, Tampa, Fla., for Alan & Katherine Jaegar.

## MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an objection by the Debtor, CSY Yacht Corporation (CSY) to claim number 72 filed by Alan R. Jaegar and Katherine Jaegar (Jaegars). The claim under challenge was filed as a priority claim in the amount of $900 and as secured in the amount of $39,100. CSY does not object to the priority claim asserted under § 507(a)(5) of the Bankruptcy Code nor to the allowance of an unsecured claim for $37,000, but does object to the claim as secured. The Jaegars claim secured status of this claim on the basis that they have a special property interest in CSY's materials, supplies and parts inventory pursuant to Fla.Stat. § 672.502 (1981).

The matter came on for hearing and the parties, by stipulation, created the record through submission of depositions. The facts as adduced from the record as created and pertinent to resolution of the matter may be summarized as follows:

At the time pertinent to the transaction under consideration, CSY was engaged in the business of manufacturing and selling sailing yachts. The Jaegars became interested in purchasing a yacht from CSY after attending a sailing school conducted by one of CSY's affiliates. Before executing the sales contract, the Jaegars paid an initial deposit of $1,000 to CSY in August of 1980 and a second deposit of $4,000 on February 5, 1981 toward the purchase of a 44 foot cutter to be constructed by CSY for a total purchase price of $176,111. On February 24, 1981, the Jaegars executed the sales purchase agreement with CSY and pursuant to the agreement paid an additional $35,000 towards the purchase price of the yacht.

CSY was in poor financial condition and by the spring of 1981 following the receipt of the Jaegars $35,000, CSY ceased constructing any new yachts. The Jaegers' yacht was one of several yachts which were never started.

On August 28, 1981, CSY filed its petition for relief pursuant to Chapter 11 of the Bankruptcy Code. While operating as a debtor in possession, CSY completed the yachts which were already under construction at the time of the commencement of the case and then proceeded to sell its unneeded inventory. Notice of Sale was sent to all interested parties and creditors of CSY. The Notice provided that the items would be sold free and clear of all liens and any liens or claims against the items sold would attach to the proceeds of the sale. In February, 1982 the sale was concluded.

The Jaegars did not file their claim contending a secured position until March 29, 1982. It is without dispute that the Jaegars do not have a security agreement nor did they file a financing statement pursuant to § 679.302 in order to perfect a secur-

ity interest under Article 9 of the U.C.C. as adopted in this State by Florida Statute § 679.101. The basis for the Jaegars' asserted secured claim is based on paragraph 14 of the sales and purchase agreement which provides as follows:

> "The boat and all materials, engines and equipment attached to the boat or any material in the possession of the builder and designated for use on the boat shall become the property of the purchaser upon the payment of the first installment. The boat and all the materials, engines and equipment in the possession of the builder shall be subject to a lien in favor of the builder as against the purchaser. In the event of any rejection of any materials or equipment by the purchaser, title to such goods will revest in the builder."

It is Jaegars' position that they have a right to recover goods from CSY as an insolvent seller under Fla.Stat. § 672.502 and that this right was transferred to the proceeds of the sale under the notice of the sale. Fla.Stat. § 672.502 provides as follows:

> § 672.502. Buyer's right to goods on seller's insolvency
>
> (1) Subject to subsection (2) and even though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of the immediately preceding section may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if the seller becomes insolvent within ten days after receipt of the first installment on their price.

In order for a buyer to recover goods in the seller's possession after the seller has become insolvent several elements must be present. The buyer must (1) have a special property interest in the goods under Fla.Stat. 672.501; (2) have paid part or all of the purchase price; and (3) keep good a tender of any unpaid portion of the purchase price. Additionally, the seller must become insolvent within ten

days following the receipt of the first installment of the purchase price. 3A *Bender's Uniform Comm. Code Serv.*, § 14.-03[2] (1983).

There is no dispute that the Jaegars paid part of the purchase price or that they were willing to keep good a tender for the remaining balance. The only issues to be resolved are whether the Jaegars have a special property interest in the goods and whether CSY became insolvent within ten days of receiving the $35,000 installment.

In order to determine if the Jaegars have a special property interest in the goods, it is necessary to refer to Fla.Stat. § 672.-501(1)(a) and (b) which provides as follows:

> § 672.501. Insurable interest in goods manner of identification of goods
>
> (1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs:
>
> (a) When the contract is made if it is for the sale of goods already existing and identified;
>
> (b) If the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers.

According to Fla.Stat. § 672.501 the buyer obtains a special property interest when the goods are identified. In the present case the Jaegars contracted to purchase a yacht to be built in the future. Pursuant to paragraph 14 of that contract, the boat and all materials, engines and equipment attached to the boat would become property of the Jaegars upon payment of the first installment. Since construction of the boat never commenced there were obviously no materials, engines or equipment attached to the boat.

As noted earlier, Paragraph 14 of the contract further provides that any materials designated for use on the boat shall become property of the Jaegars upon payment of the first installment. The Jaegars contend that this provision is inconsistent with Paragraph 3(b) which requires the installment to be paid at least 30 days prior to construction of the hull, unless CSY designated the materials to be incorporated into the boat from its inventory when it received the first installment.

Paragraph 3(b) merely requires that 30% of the purchase price be paid before construction will begin. Identification is governed by paragraph 14 which occurs when the materials were "designated" by CSY. Nothing in the record indicates that the materials were set aside or ever designated for the Jaegars yacht.

In the alternative, the Jaegars take the position that the materials and inventory of CSY constitute a tangible bulk and that reference to the materials in the contract is for an undivided share of the fungible bulk which is sufficient to establish identification for purposes of UCC 2–501. In support of their position, the Jaegars rely on Comment 5 of UCC 2–501 which provides as follows:

> 5. Undivided shares in an identified fungible bulk, such as grain in an elevator or oil in a storage tank, can be sold. The mere making of the contract with reference to an undivided share in an identified fungible bulk is enough under subsection (a) to effect an identification if there is no explicit agreement otherwise.

The Jaegars reliance on Comment 5 is misplaced. The contract did not refer to an identified fungible bulk such as 35,000 pounds of fiberglass and resin. Rather, the contract explicitly referred to those materials "designated" for use on the Jaegars' yacht. As a result, this Court is satisfied that the Jaegars' contention is without merit.

In light of the foregoing, the Court is satisfied that the materials were never identified so as to create a special property interest pursuant to UCC 2–501. As a result, the Jaegars cannot recover any property from CSY under UCC 2–502.

This being the case, it is unnecessary to address the question of whether CSY became insolvent within ten days after it received the $35,000 installment from the Jaegars.

A separate final judgment will be entered in accordance with the foregoing.